IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER H. WEST | : | CIVIL ACTION |
|  | : | NO. 14-5210 |
| v. | : | |
|  | : | |
| WARDEN MCFADDEN, et al. | : | |

O'NEILL, J.                                                                                   April 30, 2015

## MEMORANDUM

Plaintiff Christopher H. West, proceeding pro se, is an inmate who, during the time relevant to his claims in this action, was housed at the Chester County Prison. In his complaint, plaintiff alleges that on March 1, 2013, while he was on suicide watch, he "was placed in a stripped cell naked with no mattress or blanket" and that he had neither a mattress or a blanket until he was "transfer[r]ed back to JVCC in Delaware" on March 8. Dkt. No. 3 at 3. Plaintiff asserts that "[d]uring that time [he] was freezing cold, with no heat in the cell and it being wintertime" and that a nurse "observed [him] shivering uncontrollably like a 'beaten dog' . . . ." Id. He claims that he "spent three days in A point restraints on [a] cold steel slab." Id. Plaintiff claims that defendant "Dr. [Victoria] Gessner thr[ough] defendant] Warden McFadden[1] was the person responsible for the conditions of [his] treatment." Id.

Plaintiff also contends that on or about March 5, in the presence of multiple officers, Dr. Gessner sexually harassed him "by saying that [his] attempt to kill [him]self by shoving a pencil down [his] throat was only to 'learn her [sic] to give the best fellatio.'" Id. Plaintiff claims that the "sexual harassment combined with the removal of blanket and bedding amount to torture and

---

[1] Warden McFadden filed an answer to plaintiff's complaint on October 31, 2014. Dkt. No. 10.

cruel and unusual[ ] punishment."[2]  Id.  As a result of defendants' alleged conduct, plaintiff seeks "[r]elief in the amount of one million U.S. dollars for each day being tortured . . . from each defendant."[3]  He also asks that "Dr. Gessner . . . be stripped of any medical licen[s]e for violation of her [H]ippocratic oath."  Dkt. No. 3 at 3.

---

[2] Plaintiff's response to Dr. Gessner's motion to dismiss provides the following additional background.  He claims that he "ingested a bic pen while on suicide watch" on March 3, 2013 after previously having been transported from the prison to Chester County hospital on March 1 and 2.  Dkt. No. 14 at 2.  Plaintiff asserts that he "inform[ed] staff of ingestion (witnessed by staff)" and was thereafter "refused medical attention."  Id.  He claims that "Dr. Gessner told one nurse 'Stepf,' not to send [him] to the hospital on 3/3/13 after object ingestion, 'until there was at least a pint of blood on the floor.'"  Id.  He alleges that he "had seriously injured his esophagus during ingestion of [the] pen, and was bleeding profusely from the throat" and that when he was returned to Delaware, he "had to be taken to Kent General Hospital for additional surgery to remove said pen."  Id.  Plaintiff also claims that after he ingested the pen, Dr. Gessner "deliberately and specifically ordered Mr. West to be placed in four point restraints on a bare steel bunk with no blanket or mattress."  Id.  Plaintiff claims that "[t]o strap and tie a human naked to bare steel is cruel and unusual and a practice akin to the medieval 'Rack'" and that forcing him "to sleep naked on bare steel in 4 point restraints is deliberately indifferent to [his] medical injury . . . as well as mental health."  Id.

In his response to Dr. Gessner's motion plaintiff also contends that "the sexually derogatory and discriminatory remark" which Dr. Gessner allegedly made "was said with a malicious laugh, in an attempt to incite a response that would give reason to extend the plaintiff's four point restraints beyond the 48 hours already endured."  Dkt. No. 14 at 3.  He alleges that the remark "implied that homosexual behavior was what the plaintiff was attempting to practice."  Id.  He asserts that his "sexuality being ridiculed" "constitutes a hate crime."  Id.  Finally, contends that defendants' conduct was "outrageous in character and so extreme in degree when taken together in consideration[ ] that they are clearly atrocious" and that the facts "show emotional distress was inflicted and physical injury, harm and pain sustained by plaintiff."  Id.

Despite these additional allegations, the Court of Appeals has explained that "a prisoner plaintiff . . . should not be able effectively to amend a complaint through any document short of an amended pleading."  Grayson v. Mayview State Hosp., 293 F.3d 103, 109 n. 9 (3d Cir. 2002).  This Court therefore cannot construe the allegations in plaintiff's response as a supplement to his complaint.

[3] Rule 5.1.1 of the Local Rules of Civil Procedure provides that "no pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court."  E.D. Pa. Local R. Civ. P. 5.1.1.  Because the Court's jurisdiction in this case is based on the existence of a federal question, he need not plead a specific amount-in-controversy.  Accordingly, I will strike plaintiff's references to specific amounts of monetary damages in the complaint.  Any amended complaint shall not include a request for a specified amount of damages.

Construing plaintiff's claims in the light most favorable to him, he endeavors to assert claims against Warden McFadden and Dr. Gessner for deliberate indifference in violation of his rights under the Eighth Amendment for sexual harassment and for negligent or intentional infliction of emotional distress. Now before me is defendant Gessner's motion to dismiss plaintiff's claims against her for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 11, and plaintiff's response thereto, Dkt. No. 14. For the reasons that follow I will grant Dr. Gessner's motion in part and will deny her motion in part.

## STANDARD OF REVIEW

To survive Dr. Gessner's motion to dismiss pursuant to Rule 12(b)(6), plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating defendants' motion, I must separate the legal and factual elements of plaintiff's claims, accept the well-pleaded factual allegations as true and disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). I "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211, quoting Iqbal, 556 U.S. at 679. A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. at 679, quoting Fed. R. Civ. P. 8(a)(2). Where, as here, plaintiff is proceeding pro se, I have "an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to

support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## DISCUSSION

**I.     Deliberate Indifference**

The Supreme Court has held that the Eighth Amendment prohibits "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citation and internal quotation omitted). Liberally construing plaintiff's pro se complaint, he appears to assert that his rights under the Eighth Amendment were violated in two ways:  (1) through the prolonged use of restraints and (2) as Dr. Gessner contends, for cruel and unusual punishment in the context of the provision of medical care.  Dkt. No. 11-1 at 4.  It has been held that Eighth Amendment claims involving the prolonged use of restraints are properly analyzed under the deliberate indifference standard.  See Womack v. Smith, No. 06 -2348, 2011 WL 819558, at *11 (M.D. Pa. Mar. 2, 2011).  The Eighth Amendment also proscribes deliberate indifference to the serious medical needs[4] of inmates.  See Estelle v. Gamble, 429 U.S. 97, 104–05 (1994).  Deliberate indifference occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3rd Cir. 2003), quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989).

The allegations in plaintiff's complaint that he was denied a blanket and bedding and placed in restraints while on suicide watch are not sufficient without more to plead deliberate indifference.  Dr. Gessner argues that "plaintiff's recitation of the facts underlying his constitutional claim illustrate that care was provided to him to address his apparent suicidality"

---

[4]     An inmate's medical need will be classified as serious if it results in significant pain, if it has exposed the inmate to further injury and if it can cause permanent injury if left untreated.  Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

and that his allegations "demonstrate[ ] nothing more than a disagreement as to the form and adequacy of the treatment rendered – not deliberate indifference . . . ." Dkt. No. 11-1 at 6. With this, I agree to a certain extent. See Carrigan v. State of Del., 957 F. Supp. 1376, 1385 (D. Del. 1997) (finding there was insufficient evidence to support a finding of deliberate indifference: "[t]hat Plaintiff's room contained no bed sheets, facilities or instrumentalities, indicates that the Administrative Defendants carefully sought to remove Plaintiff from all means of harm. While bed sheets may seem harmless and even essential to comfort, they may be a deadly instrument to a person who is contemplating suicide."); see also Milhouse v. Gee, No. 09-2134, 2011 WL 3627414, at *13 (M.D. Pa. Aug. 17 2011) (holding on summary judgment that denial of mattress to an inmate for two weeks was not sufficiently serious to rise to the level of an Eighth Amendment violation); Castro v. Chesney, No 97-4983, 1998 WL 767467, at *8 (E.D. Pa. Nov. 3, 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation.").

That plaintiff claims he was restrained for three days, however, makes a difference. Remarkably, this allegation is nowhere mentioned in Dr. Gessner's motion to dismiss. See Dkt. No. 11. While legitimate penal concerns or a desire to protect plaintiff from self-harm may have motivated the placement of restraints on plaintiff, I find that plaintiff's allegation regarding the three-day long duration of his restraint is sufficient to nudge his claim for an Eighth Amendment violation across the line from a claim which is only possible to a claim which is plausible. See Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) (finding that handcuffing an inmate to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while subject to taunting by correctional officers constituted an Eighth Amendment violation); see also Blackmon v. Sutton, 734 F.3d 1237 (10th

Cir.2013) (finding a fact question remained on summary judgment where the inmate "was placed in the [restraint] chair because of a legitimate threat of self-harm but then arguably kept there for extensive periods after any threat of self-harm had dissipated."); Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) ("In our civilized society, we would like to believe that chaining a human being to a metal bed frame in a spread-eagled position would never be necessary. Unfortunately, it sometimes is.  Courts have thus approved the limited use of four-point restraints, as a last resort, when other forms of prison discipline have failed.") (emphasis added); Walker v. Owens, No. 7:13CV00425, 2015 WL 1417070, at *4 (W.D. Va. Mar. 27, 2015) ("the continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can violate the Eighth Amendment, even when that inmate does not suffer significant physical injuries"); cf. Camp v. Brennan, 54 F. App'x 78, 81 (3d Cir. 2002) (finding on summary judgment that the placement of four point restraints on a prisoner for two days while clothed only in a blanket did not constitute an Eighth Amendment violation).  Accordingly I will deny Dr. Gessner's motion to dismiss to the extent that it relates to plaintiff's claim that his constitutional rights were violated when he was restrained for three days in a cell with no blanket or bedding.[5]

## II.     Sexual Harassment

Plaintiff also contends that Dr. Gessner made an inappropriate and flagrantly sexual comment to him.  He does not allege, however, that her alleged conduct involved contact or

---

[5] Even if I were to dismiss plaintiff's claims of deliberate indifference, I would permit him leave to amend.  Given the additional allegations in his response to Dr. Gessner's motion, including his allegation that "Dr. Gessner told one nurse 'Stepf,' not to send [him] to the hospital on 3/3/13 after object ingestion, 'until there was at least a pint of blood on the floor,'" Dkt. No. 14 at 2, I could not say that leave to amend this claim would be futile.  See Natale, 318 F.3d at 582 (finding deliberate indifference where a prison official is put on notice of a prisoner's serious medical need and fails to remedy or investigate that need).

touching – it was nothing more than a verbal comment.  Nor does he make allegations sufficient to support a finding that her comment caused him to suffer pain.  Although the Court of Appeals for the Third Circuit "has not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate," courts elsewhere have held that "sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction" as is required to state a claim for a constitutional violation.  Chambliss v. Jones, No 14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (citations omitted); Boxer X v. Harris, 437 F.3d 11107, 1111 (11th Cir. 2006) (finding that solicitation of a prisoner's masturbation, even under the threat of retaliation does not violate the Eighth Amendment); Morales v. Mackalm, 278 F.3d 126, 129 (2d Cir. 2002) (finding that a demand for sex in front of other female staff does not rise to the level of an Eighth Amendment violation), overruled on other grounds in Porter v. Nussle, 534 U.S. 516 (2002); see also Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) ("To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind.") (citation omitted).  "While the behavior alleged by [plaintiff] on the part of [Dr. Gessner] may be inappropriate, without allegations of direct physical contact and, or, pain [resulting from the comment], it does not rise to the level of an Eighth Amendment Violation."  Chambliss, 2015 WL328064, at *3.  Dismissal of plaintiff's claim that Dr. Gessner sexually harassed him is warranted, albeit with leave to amend to the extent that plaintiff can allege circumstances sufficient to trigger Dr. Gessner's liability.[6]

---

[6] "[I]n civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482

**III.     Infliction of Emotional Distress**

Dr. Gessner also construes plaintiff's complaint as asserting claims for negligent and intentional infliction of emotional distress, although she contends that his allegations are insufficient to support either claim.  With respect to a claim for intentional infliction of emotional distress, "[t]he tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and intolerable in a civilized society.'" McGreevey v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005), quoting Restatement (Second) of Torts § 46.  Since I have determined that plaintiff has sufficiently stated an Eighth Amendment claims, his claim of intentional infliction of emotional distress will survive at this stage of the proceeding.  Of course, Dr. Gessner remains free to attempt to later demonstrate that the extent of any actual misconduct did not, in fact, rise to the level necessary for intentional infliction of emotional distress.

With respect to a claim of negligent infliction of emotional distress, Dr. Gessner argues that plaintiff has not stated a cause of action for negligent infliction of emotional distress because he has not "allege[d] a physical injury as a result of Dr. Gessner's conduct."  Dkt. No. 11-1 at 10. But a claim for negligent infliction of emotional distress is available in

> four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.

Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008).  Negligent infliction

---

F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

of emotional distress may thus exist where "a special contractual or fiduciary relationship exists between the parties creating an implied duty on the part of the defendants to care for the plaintiffs' emotional well-being, and the plaintiffs suffered extreme emotional distress as a result of the defendants' breach of that duty." Madison v. Bethanna, Inc., No. 12–1330, 2012 WL 1867459, at *12 (E.D. Pa. May 23, 2012) (internal quotations omitted). Some doctor-patient relationships "involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm." Toney v. Chester Cnty. Hosp., 36 A.3d 83, 95 (Pa. 2011). Plaintiff claims only that "Dr. Gessner thr[ough] Waden McFadden was the person responsible for the conditions of [his] treatment." Dkt. No. 3 at 3. Even liberally construing plaintiff's pro se complaint, absent the additional allegations contained in his response to Dr. Gessner's motion to dismiss I find that his allegations are not presently sufficient to show that Dr. Gessner breached any duty of care she may have owed to plaintiff by not providing adequate medical treatment. Cf. Douglas v. Doe, No. 10-5574, 2014 WL 4494969, at *10 (E.D. Pa. Sept. 12, 2014) (finding plaintiff stated a claim for negligent infliction of emotional distress against a defendant who allegedly failed to provide the plaintiff with adequate medical care when he did not arrange for the plaintiff to have alternative sleeping facilities or safety ladders after the plaintiff had leg and ankle surgery). I will grant Dr. Gessner's motion to dismiss to the extent that it seeks to dismiss any claim for negligent infliction of emotional distress against her. Plaintiff will, however, be granted leave to amend this claim to the extent that he is able to allege circumstances sufficient to trigger Dr. Gessner's liability.

     An appropriate Order follows.