IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER H. WEST | : | CIVIL ACTION |
| | : | NO. 14-5210 |
| v. | : | |
| | : | |
| WARDEN MCFADDEN, et al. | : | |

O'NEILL, J.                                                                                  April 13, 2016

## MEMORANDUM

Plaintiff Christopher H. West, proceeding pro se, is an inmate who, during the time relevant to his claims in this action, was housed at the Chester County Prison. Now before me are defendant Dr. Victoria Gessner's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 22, the motion of defendant Warden D. Edward McFadden for judgment on the pleadings pursuant to Rule 12(c), Dkt. No. 24, and plaintiff's response to defendants' motions. Dkt. No. 25. I will grant defendants' motions for the following reasons.

I previously granted in part[1] and denied in part Gessner's motion to dismiss plaintiff's complaint. I found that plaintiff's claim that he was restrained for three days in a cell with no blanket or bedding was "sufficient to nudge his claim for an Eighth Amendment violation across the line from a claim which is only possible to a claim which is plausible." Dkt. No. 15 at ECF p. 5. In his initial complaint, plaintiff alleged, inter alia, that on March 1, 2013, while he was on suicide watch, he "was placed in a stripped cell naked with no mattress or blanket," that he "spent three days in A point restraints on [a] cold steel slab," that he "was freezing cold, with no heat in the cell and it being wintertime," that a nurse "observed [him] shivering uncontrollably

---

[1] Plaintiff's sexual harassment claim and his claim for negligent infliction of emotional distress were dismissed "with leave to amend to the extent that plaintiff can allege circumstances sufficient to trigger Dr. Gessner's liability." Dkt. No. 16.

like a 'beaten dog' . . . " and that he had neither a mattress or a blanket until he was "transfer[r]ed back to JVCC in Delaware" on March 8.  Dkt. No. 3 at 3.

In his amended complaint, plaintiff alleges only the following:  "In March 2013, Dr. Gessner and Warden McFadden held plaintiff in restraints for three (3) days with no blanket or bedding (8th Amendment Violation).  Wherefore, plaintiff seeks mon[e]tary damages for enduring cruel and unusual punishment."  Dkt. No. 17.

In his response to defendants' motions, plaintiff adds that "[b]y [his] discovery based on incident reports, it is clear fact that he was held for 3 days naked strapped in 4 points to a metal bunk when the alternative of humane restraint chair existed."  Dkt. No. 25 at ECF p. 1.  He contends that "[a]t no time has [p]laintiff claimed that the chair was cruel or unusual.  In fact it is the humane option to protect Plaintiff from himself, serving a legitimate penological interest.  The naked 4 points were punishment."  Id. at ECF p. 2.  Plaintiff argues that "[a]t all times Warden McFadden and Dr. Gessner had been briefed of the situation by staff, making both defendants involved and responsible as they had the ultimate say in above cruel punishment."  Id. at ECF p. 2.  He asserts that "[t]here is [an] obvious issue as to disagreement of facts between Plaintiff and Defendants."  Id.  at ECF p. 1.  He also asserts that "he began grievance proceedings while at CCP with a se[rgea]nt but was unable to finish due to being moved back to Delaware."  Id.

**I.    Warden McFadden's Motion**

Warden McFadden moves for judgment on the pleadings,[2] arguing, inter alia,  that

---

[2]    A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents."  Atiyeh v. Nat'l Fire Ins. Co. of

"nowhere, other than in a conclusory and formulaic way, does Plaintiff describe how any conduct of Warden McFadden contributed to any alleged constitutional violations." Dkt. No. 24 at ECF p. 7.  Indeed, plaintiff's only allegations which are specific to Warden McFadden are that "Dr. Gessner thru [sic] Warden McFadden was the person responsible for the conditions of my treatment," Dkt. No. 3 at ECF p. 3, and that "Dr. Gessner and Warden McFadden held plaintiff in restraints for three (3) days . . . ." Dkt. No. 17 at ECF p. 1.  In his response to defendants' motions, plaintiff adds that "[a]t all times Warden McFadden . . . had been briefed of the situation by staff . . . ." Dkt. No. 25 at ECF p. 2.  These allegations are not enough to withstand McFadden's motion.

It is well established that a defendant must have personal involvement in the alleged wrongs to be held liable for a violation of a plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but importantly such allegations "must be made with appropriate particularity." Id.  Plaintiff has not set forth any facts that would show that McFadden directed, had knowledge

---

Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).  Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  See Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted).  Accordingly, in deciding a motion for judgment on the pleadings, I "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663.  The Court "may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

of, or otherwise assented to or tolerated deprivations or violations of plaintiff's Eighth Amendment rights, nor do his allegations suggest that McFadden had any involvement in the establishment or perpetuation of an unlawful policy, practice or custom.  I will grant McFadden's motion for judgment on the pleadings.

## II.    Dr. Gessner's Motion

Dr. Gessner moves for summary judgment,[3] arguing, inter alia, that plaintiff has not set forth evidence to support a finding that she acted with deliberate indifference as would be required to support his claim that she violated his rights under the Eighth Amendment.  See Dkt. No. 22-17 at ECF p. 10.  It has been held that Eighth Amendment claims involving the prolonged use of restraints are properly analyzed under the deliberate indifference standard.  See Womack v. Smith, No. 06 -2348, 2011 WL 819558, at *11 (M.D. Pa. Mar. 2, 2011).  But see Young v. Martin, 801 F.3d 172, 178-180 (3d Cir. 2015) (finding the plaintiff's claims regarding the use of a four-point restraint chair "should be analyzed under the excessive force test" where the plaintiff "never engaged in a physical altercation and was placed in the restraint chair while entirely

---

[3] Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.
   The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

docile"). Deliberate indifference occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3rd Cir. 2003), quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Plaintiff was ordered to be placed in four point restraints on March 3, 2013. Dkt. No. 22-13 at ECF p. 8. Just one day earlier, he had been admitted to Chester County Hospital for "recurrent foreign body ingestion." Dkt. No. 22-8 at ECF p. 63; see also Dkt. No. 22-14 at ECF p. 6 (reporting "[i]ngestion of a pencil"); id. at ECF p. 5 (March 3, 2013 report that "inmate did not ingest a spork, it was a rolled up paper towel/s"). Upon his return to Chester County Prison on March 3, plaintiff "appeared to be choking" and reported that he "had swallowed a piece of concrete from the floor." Dkt. No. 22-14 at ECF p. 4. Approximately 4 hours later, permission was given to "initiate Four Points protocol" after a nurse reported that he "continues to ingest foreign objects. Picking ca[u]lk off from around vents and eating." Dkt. No. 22-13 at ECF p. 8.

Although plaintiff argues that "[t]he naked 4 points were punishment," Dkt. No. 25 at ECF p. 2, he has not set forth any evidence that he was restrained "for the purposes of humiliation without legitimate penal concerns." Camp v. Brennan, 54 F. App'x 78, 81 (3d Cir. 2002). Indeed, plaintiff points to no evidence which would raise a material question of fact as to whether he was restrained for any purpose other than to ensure his own safety in view of his history of ingesting foreign objects. See Dkt. No. 22-5 at ECF p. 3 ("reportedly swallowing plastic sporks" in November 2008); Dkt. No. 22-7 at ECF p. 8 ("swallowed unknown metal object" in December 2008); Dkt. No. 22-7 at ECF p. 30 (January 2009 abdominal x-ray request report showing "a metallic structure which appears to be a clip"); Dkt. No. 22-14 at ECF p. 19 (October 3, 2012 chart note that "Xray revealed a pen inside inmate stomach"). Cf. Crawford v. White, No. 14-1682, 2015 WL 3753930, at *14 (M.D. Pa. June 16, 2015) ("the wanton course of

conduct for staff would have been to refrain from intervening and to leave [the suicidal inmate plaintiff] at the risk of self-destruction"); Inmates of Allegheny Cnty. Jail v. Wecht, 565 F. Supp. 1278, 1285-86 (W.D. Pa. 1983) ("there are occasions when restraints are a life-saving necessity, but such occasions must be kept at a minimum, closely monitored and utilized as humanely as possible"). Rather, even when restrained, plaintiff continued to harm himself, causing his right hand to bleed and banging his head on his bed frame. See Dkt. No. 22-11 at ECF p. 7 ("Inmate hitting head on metal bed frame while in four point restraints, rubbed top of right hand on wall and caused bleeding.").

"Furthermore, the meticulous care and attention which [plaintiff] received from prison medical and correctional staff while in restraints belies any claim of deliberate indifference to his physical needs." Crawford, 2015 WL 3753930, at *14. Gessner argues and I agree that she has set forth evidence to show that

> [d]uring his . . . periods of restraint in March 2013, Plaintiff was frequently tended to and consistently monitored by medical and mental health staff, had his vital organs checked regularly, was provided with psych medication and wound care, was periodically released for exercise, to eat and drink, to use the restroom, and to bathe, and was provided with a suicide smock in place of clothing and bedding.

Dkt. No. 22-17 at ECF p. 12; see also id. at ECF p. 4-8 (summarizing the records of plaintiff's treatment between March 1, 2013 and March 8, 2013, when plaintiff was transferred to Delaware); Dkt. No. 22-9 (restraint flow sheets); Dkt. No. 22-13 (Telephone/Verbal Order Forms (Medical)) Dkt. No. 22-14 (plaintiff's chart notes from May 2009 through March 8, 2013). The evidence now before me shows that while plaintiff was subjected to four-point restraint orders his vital signs were monitored, he was fed, allowed to go to the bathroom, given limited time to exercise and was released briefly from his restraints for care for self-inflicted wounds. Dkt. No.

22-9 at ECF p. 3-8.  On these facts, plaintiff's deliberate indifference claim fails against Gessner. See Abdullah v. Seba, No. 13-1227, 2014 WL 4828222, at *13 (M.D. Pa. Sept. 29, 2014) (finding no deliberate indifference where "the use of . . . restraints was closely monitored by medical personnel and those medical staff observed no medical reason to remove these restraints).  Accordingly I will grant summary judgment in her favor.[4]

     An appropriate Order follows.

---

[4] In view of my findings with respect to plaintiff's claim against Gessner, I find that it would be futile to permit plaintiff to amend his claim against McFadden.